UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LAVAROS DAVIS,

    Plaintiff,

v.                                Case No. 3:20cv5935-MCR-HTC

MARK S. INCH, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Lavaros Davis, a prisoner proceeding *pro se* and *informa pauperis*, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the complaint, the undersign recommends the claims against defendants Mark Inch, Walker Clemmons, A. Flores, J. Santiago, Dr. Rodriguez, Nurse Sing, and Nurse Jane Dow[1] (sic) be dismissed for failure to state a claim on which relief can be granted.

---

[1] The undersigned presumes Jane Dow refers to Jane Doe.

### I. BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently incarcerated at Santa Rosa Correctional Institution (SRCI) who sues four (4) supervisory officials, three (3) medical personnel, four (4) SRCI officers and three (3) John Dow (sic) defendants for an "inmate beating" that occurred on August 6, 2020 at SRCI. ECF Doc. 1 at 7. After screening the complaint, the Court found Plaintiff's claims of excessive force sufficient to be served on the four SRCI Defendant Officers and ordered Plaintiff to provide the requisite service copies. ECF Doc. 8.

As stated above, this Report and Recommendation is as to the remaining defendants: Mark Inch, Walker Clemmons, A. Flores, J. Santiago, Dr. Rodriguez, Nurse Sing, and Nurse Jane Dow (sic). Plaintiff's complaint contains the following allegations as they relate to those defendants and are taken as true for purposes of this Report and Recommendation.

After Plaintiff was "unconstitutionally assaulted" by the Defendant officers, he was escorted to the medical department in a wheelchair. ECF Doc. 1 at 8. Upon Plaintiff's arrival, Nurse Sing and Nurse Jane Dow removed the spit shield from the back of Plaintiff's head and "cleaned the split . . . to stop the bleeding." *Id.* at 9. Nurse Dow then removed the left side of the spit shield and cleaned the left side of

Plaintiff's head and face. *Id.* When the nurses finished attending to Plaintiff's wounds, Nurse Sing documented Plaintiff's injuries on his medical charts. *Id.*

Nurse Dow then placed the spit shield back on Plaintiff's head while she and Nurse Sing blocked the camera "to cover up and limit the severity . . . of [Plaintiff's] injuries." *Id.* At no point after the attack did Nurse Dow or Nurse Sing report the assault to their superiors. *Id.* at 10. Additionally, Dr. Rodriguez failed to perform a brain scan, which would have determined "whether or not [Plaintiff] was bleeding in his brain." *Id.* at 20.

As to the supervisory officials, Plaintiff alleges that Defendants Inch, Clemmons, Flores, and Santiago have "allowed prison officials at [SRCI] to establish stat-wide (sic), policies, customs and practices of beating, assaulting and . . . causing him great bodily harm in violation of the 8th and 14th amendment." *Id.* at 12. Plaintiff further claims that the supervisory officials were placed on notice of the SRCI officers' conduct based on the numerous grievances and complaints filed by Plaintiff and other inmates. *Id.* at 13.

Based on these allegations, Plaintiff seeks (1) a declaratory judgment holding the assault violated his Eighth and Fourteenth Amendment rights, (2) an injunction "ordering defendants . . . to immediately expunge any and [all] policies . . . that will allow Plaintiff to be harmed by officers," (3) an order directing the SRCI to conduct

a brain scan on Plaintiff's head, and (4) $2.5 million dollars in compensatory damages as well as punitive damages and any other relief.

## II.  LEGAL STANDARD

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court is required to review his complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(a)–(b).  When screening Plaintiff's complaint, the Court must read Plaintiff's *pro se* allegations in a liberal fashion.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).  The complaint may also be dismissed if the facts, as plead, do not state a claim to relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 (2009).

## III. ANALYSIS

As an initial matter, Plaintiff seeks monetary and injunctive relief against all defendants "in their individual & official capacities." ECF Doc. 1 at 1. However, absent an express waiver by the State or a valid congressional override, the Eleventh Amendment bars an action for monetary damages against an official or agency of the State of Florida in federal court. *See Gamble v. Florida Dept. of Health & Rehab. Services*, 779 F.2d 1509, 1512 (11th Cir. 1986). A suit against a state employee in his official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). The State of Florida has not waived its sovereign immunity from §1983 suits. *See Gamble*, 779 F.2d at 1513–15. Thus, Plaintiff's claims for monetary relief under section 1983 against Inch, Clemmons, A. Flores, J. Santiago, Dr. Rodriguez, Nurse Sing, and Nurse Jane Dow in their official capacities should be dismissed.

Also, for the reasons set forth below, Plaintiff's claims against these seven (7) Defendants in their individual capacities should also be dismissed.

### A. Supervisor Liability Under § 1983

Plaintiff has named Inch, Clemmons, Flores, and Santiago as defendants in this action because they are supervisors to the Defendant officers who allegedly assaulted him. Supervisory officials, however, cannot be liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of respondent superior or

vicarious liability." *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994). Instead, supervisory liability may occur "when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a casual connection between the actions of the supervisor and the alleged violation." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006).

Here, Plaintiff does not allege Inch, Clemmons, Flores, or Santiago personally participated in the alleged assault. Thus, for Plaintiff to state a claim of supervisory liability against these defendants, Plaintiff must allege facts sufficient to establish a causal connection between each supervisory defendant and the assault.

A causal connection can be established when (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* The standard by which a supervisor "is held liable in [his] individual capacity is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

Although Plaintiff uses buzz words, such as "policies, customs and practices" and "wide-spread," they are merely labels and conclusions, without any supporting facts. *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286

(1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft*, 556 U.S. at 680–81 (explaining conclusory allegations are not entitled to a presumption of truth). In other words, Plaintiff's allegations of wrongdoing against the supervisory officials are nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

For example, Plaintiff alleges Inch had "unofficial policies, customs and practices of allowing the Defendants (herein named) . . . at the institutional level to establish such policies, customs and practices of beatings, assaults, attempted murders, injuries causing great bodily harm to Plaintiff . . . ." ECF Doc. 1 at 11. While the quoted language comes from one paragraph of his complaint against Inch, pages 11–19 of the complaint are replete with similar general and conclusory allegations. Nowhere in the complaint does Plaintiff allege "any facts to support such allegation[s]" and, instead, "Plaintiff simply parrots the language of the cases which hold that supervisory liability may arise if the supervisor 'instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights.'" *Milledge v. Jones*, No. 4:15CV577-WS/CAS, 2016 WL 11680219, at *2 (N.D. Fla. Nov. 18, 2016) (quoting *Gross v. White*, 430 F. App'x 527, 531 (11th Cir. 2009)).

Plaintiff does not identify when any particular policy or custom was put in place, who put it in place, or identify anyone else whose rights have been violated as a result of the policy or custom. Moreover, Plaintiff only identifies two specific

policies. First, he references the practice of having the attorney general's office represent state employees in section 1983 actions, which Plaintiff contends is wrongful and shows that the supervisory officials are allowing the "assaults, beating, and attempted murders" to continue. ECF Doc. 1 at 12. One of the jobs of the attorney general is to defend state officials, particularly when, as here, they are named in their official capacities. Thus, this "policy" does not support a constitutional violation.

The second alleged policy is transferring officials accused of assaults to another institution. ECF Doc. 1 at 15. Plaintiff, however, does not identify any instance where that has occurred. Simply, such threadbare allegations do not meet the "extremely rigorous" standard for imposing supervisory liability. *See Hall v. Smith*, 170 F. App'x 105, 108 (11th Cir. 2006) (stating that "[b]ecause Hall alleged no factual support for his conclusory statement that the City had a policy or custom of grossly inadequate supervision and training of its employees, the district court did not err in dismissing Hall's claims against the City").

Similarly, Plaintiff alleges in conclusory fashion that the "pattern" of "beating and attempted murders of Florida inmates" is "widespread." ECF Doc. 1 at 13. He alleges the excessive force used against him is "not an isolated incident." *Id.* However, nowhere in Plaintiff's twenty-eight-page complaint does he state how many incidents there have been involving the Defendant officers. Indeed, nowhere

in the complaint does he identify even one other incident. "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated instances." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Finally, Plaintiff alleges the supervisory defendants were "placed on notice" of the Defendant Officers' potential for assaulting inmates through "a number of grievance[s] and complaints filed by inmates and the Plaintiff over a period of months." ECF Doc. 1 at 13. Such an allegation, however, is insufficient to establish the extent of the supervisors' knowledge or the level of their involvement. Plaintiff does not allege that these supervisory officials ever saw the grievances and, even if he had, "filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance." *Thompson v Willis*, No. 3:14cv246/MCR/EMT, 2016 WL 5339362 (N.D. Fla. June 9, 2016); *see also Milledge*, 2016 WL 11680219, at *2 (finding Plaintiff's grievances insufficient to show that a supervisory official actually knew of the incidents which Plaintiff complained). Rather, "[k]noweldge imputed to the supervisor 'must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights.'" *Id.* (quoting *Tittle v. Jefferson Cty. Comm'n*, 10 F.3d 1535, 1542 (11th Cir. 1994)).

Plaintiff alleges no facts from which the Court could reasonably infer that any of the supervisory officials knew Defendant Officers were going to assault him. He does not identify a single other incident that these supervisory officials were aware of involving the Defendant Officers. A supervisor's failure to act or institute certain policies "must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur." *Haverty v. Crosby*, No. 1:05 CV 00133 MP EMT, 2006 WL 839157, at *5 (N.D. Fla. Mar. 28, 2006).

Finally, given the scarcity of any facts supporting Plaintiff's claim of supervisory liability, the undersigned recommends the claims against Inch, Clemmons, Santiago, and Flores be dismissed without leave to amend.

### B. Medical Personnel Defendants

Plaintiff alleges Nurse Dow and Nurse Sing failed to report Plaintiff's assault to their superiors and attempted to cover up the severity of Plaintiff's injuries. ECF Doc. 1 at 8–9. Plaintiff further alleges Dr. Rodriquez failed to order a brain scan. Reading Plaintiff's allegations liberally, as this Court must, it appears Plaintiff is seeking to hold the nurses liable for failing to report the alleged assault and Dr. Rodriguez liable for deliberate indifference to a medical need.[2] Plaintiff's bare allegations, however, are insufficient to establish a claim of deliberate indifference.

---

[2] The undersigned does not read Plaintiff's complaint as attempting to assert a deliberate indifference to a medical need claim against the Nurses, as Plaintiff admits in his complaint they

1. <u>Nurse Dow and Nurse Sing</u>

"A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious, a prison official's act or mission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). Second, the prison official must subjectively have a "sufficiently culpable state of mind . . . one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks omitted). This means that an official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety." *Id.* "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harms exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's complaint is simply devoid of any allegations indicating that Nurse Dow or Nurse Sing knew the Defendant officers had used excessive force on him. Plaintiff alleges the Defendant officers assaulted him while he was in his cell. Thus, the Nurses, both of whom were in the medical department at the time of the alleged assault, would not have witnessed the assault. Moreover, although he alleges the

---

tended to his injuries, cleaned his spit shield, and made efforts to stop his bleeding. There are no allegations that additional treatment was required of the Nurses and that they failed to provide it. Regardless, as set forth in section B.2, below, any such claim, at best, would be a dispute over medical treatment, which is insufficient to establish a constitutional violation. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Case No. 3:20cv5935-MCR-HTC

Nurses attempted to "cover up" the severity of his injuries by using their bodies to block the camera, without any facts showing the Nurses knew there had been an assault, this allegation is purely conclusory. Indeed, elsewhere in the complaint Plaintiff admits the Nurses identified his injuries on the medical forms, and Plaintiff makes no allegation the information they recorded was minimized. ECF Doc. 1 at 9.

Plaintiff also admits the Nurses tended to his medical needs and attempted to stop the bleeding from the back of his head. This conduct clearly belies any claim the Nurses possessed a culpable state of mind. "Failure to report [an] incident does not violate the Eighth Amendment absent facts showing that by failing to report the incident, [defendants] knowingly disregarded an excessive risk to [Plaintiff's health or safety." *Gifford v. Rathman*, No. 1:14-CV-1179-SLB-JEO, 2017 WL 4340454, at *26 (N.D. Ala. Sept. 29, 2017) (quoting *Bullard v. St. Andra*, No. 1:17-CV-0328-MJS(PC), 2017 WL 1398834, *3 (E.D. Cal. Apr. 19, 2017)).

Moreover, Plaintiff's failure to report claim fails because there is no allegation Plaintiff was harmed because of the failure to report. *See Crenshaw v. Lewis*, No. 8:14-CV-1941-T-27AEP, 2016 WL 521531, at *3 (M.D. Fla. Feb. 5, 2016) (dismissing for failing to state a claim because Plaintiff's allegations that defendants failed to report that an officer punched Plaintiff failed to show an "objectively sufficient serious deprivation of rights"). In other words, Plaintiff was not subject

to any additional harm because the Nurses did not further report the assault, even had they known an assault had occurred. This allegation, in fact, is similar to a claim for failure to investigate, which also does not establish a constitutional violation. *See Reynolds v. Henry*, 69 F.3d 548 (10th Cir. 1995) ("A conclusory allegation of a failure to investigate without other non-conclusory allegations . . . does not constitute a cognizable claim for violations of Eighth Amendment rights.").

    2. <u>Dr. Rodriguez</u>

The crux of Plaintiff's claim against Dr. Rodriquez is that he failed to order a brain scan to determine whether Plaintiff was "bleeding in his brain," which exposed him to unnecessary and wanton infliction of pain in violation of the Eighth Amendment. ECF Doc. 1 at 20

A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To state a claim of deliberate indifference to a serious medical need, Plaintiff must allege facts sufficient to show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d at 1291, 1306–07 (11th Cir. 2009) (citing *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)). Plaintiff, however, has alleged no such facts in his complaint.

"A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann*, 588 F.3d at 1307. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. *Id.* In either case, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

As stated above, Plaintiff alleges he was bleeding from the back of his head, and this was cleaned by the Defendant Nurses. This injury, alone, does not show a serious medical need. There is nothing about the injury as described by the Plaintiff from which a lay person would conclude a doctor's attention was needed. There is no allegation that the injury was one diagnosed as needing treatment. To the contrary, Plaintiff alleges the Nurses cleaned the blood and that no further medical treatment was provided. While he may contend additional treatment was needed, he has set forth no facts showing why additional treatment was needed.

To establish the second element of his claim, Plaintiff must show Dr. Rodriguez both knew of *and* disregarded an excessive risk to his health or safety. "[T]he official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], *and* he must also [have] draw[n] the inference." *Farmer*, 511 U.S. at 837 (emphasis added). Plaintiff must

prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Id.*

Establishing deliberate indifference also requires Plaintiff to show "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Thus, Dr. Rodriguez's response to Plaintiff's serious medical need must be "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice." *Id.* at 1258 (citing *Estelle*, 429 U.S. at 105–06).

As the Supreme Court has emphasized, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105; *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). Rather, medical treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the

conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Plaintiff has set forth no facts showing Dr. Rodriguez knew Plaintiff was in serious risk of harm if he did not get a brain scan or that he disregarded that risk through gross conduct. Indeed, Plaintiff does not allege any facts showing a brain scan was necessary. The complaint is devoid of any facts showing that the failure of a brain scan has caused any additional injuries or exacerbated an existing injury. To the contrary, it appears Plaintiff believes he should have had a brain scan because "[s]uch hits to the head have been known to cause football players and boxers to be paraplegic." ECF Doc. 20. He does not allege he suffers from such a condition. Plaintiff's mere belief that a brain scan should have been conducted does not establish a constitutional violation.

Moreover, while the "the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Rutledge v. Cain*, No. 5:15-CV-42-RV-GRJ, 2016 WL 5395271, at *2 (N.D. Fla. Aug. 18, 2016), *report and recommendation adopted*, No. 5:15-CV-42-RV-GRJ, 2016 WL 5349460 (N.D. Fla. Sept. 23, 2016) (quoting *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988)). In other words, a "simple difference in medical opinion between the prison's medical staff and the inmate as to the [inmate's] diagnosis or course of treatment" does not give rise to a

claim under the Eighth Amendment.  *Harris*, 941 F.2d at 1505.  Moreover, "[t]he Eighth Amendment does not guarantee a prisoner's choice of a physician, a mode of treatment or a place of treatment."  *Brownlow v. Chavez*, 871 F. Supp. 1061, 1064 (S.D. Ind. 1994) (citing *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988)).

Although Plaintiff may have believed a brain scan was needed, Dr. Rodriquez's decision not to order a scan does not rise to the level of a constitutional violation.  Thus, the undersigned recommends the claims against Dr. Rodriguez be dismissed without leave to amend as an amendment would be futile.

## IV.  CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1. Plaintiff's claims against defendants Mark Inch, Warden Clemmons, A. Flores, J. Santiago, Nurse Dow (sic), Nurse Sing, and Dr. Rodriguez be dismissed under 28 U.S.C. §§ 1915A(b)(1) for failure to state a claim on which relief can be granted.

2. Judgment be entered in favor of defendants Mark Inch, Warden Clemmons, A. Flores, J. Santiago, Nurse Dow (sic), Nurse Sing, and Dr. Rodriguez on all claims.

3. The case be remanded to the undersigned for further pretrial proceedings.

At Pensacola, Florida, this 14th day of January, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**