UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LAVAROS DAVIS,

    Plaintiff,

v.   Case No. 3:20cv5935-MCR-HTC

SGT. DANIELS, et al.,

    Defendants.

_____/

REPORT AND RECOMMENDATION

Plaintiff Lavaros Davis, a represented prisoner proceeding *in forma pauperis* under 42 U.S.C. § 1983, alleges four employees of the Florida Department of Corrections ("FDOC") violated his Eighth Amendment rights either by using excessive force against him or by failing to prevent the excessive use of force. ECF Doc. 1.[1] The four Defendants—Lieutenant Jeffrey Nousiainen, Sergeant Alex Daniels, Colonel Truman Vaughn, and Colonel Joao Newcomb—have moved for summary judgment, arguing the use of force was justified and no constitutional violation occurred. ECF Doc. 96. Plaintiff responded in opposition to Defendants' motion. ECF Doc. 121.[2] Defendants replied with leave from the Court. ECF Doc.

---

[1] Plaintiff initiated this case on November 10, 2020, as a *pro se* litigant. *See* ECF Doc. 1. Counsel appeared on his behalf on September 2, 2022. *See* ECF Doc. 99.
[2] Plaintiff's initial response, ECF Doc. 118, was amended to provide additional exhibits.

128. After reviewing the parties' submissions, the record, and the relevant law, the undersigned recommends the motion for summary judgment be DENIED because a genuine dispute of material fact exists as to whether Defendants used excessive force.

## I. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. The Court must review the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993) (citations omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).

Case No. 3:20cv5935-MCR-HTC

## II. FACTS

### A. Plaintiff's Version of Events[3]

Plaintiff is a mentally impaired (with a classification of "S-3") inmate, who suffers from Guillain-Barre syndrome and is "wheelchair-dependent."[4] On August 6, 2020, around 3 p.m., while housed in a self-harm observation cell in the "Q" Dorm at Santa Rosa Correctional institution ("SRCI"), ECF Docs. 96-5 at 7, 9; 121-2 at 1, Plaintiff briefly placed a piece of paper on his window for privacy reasons while using the toilet. ECF Docs. 96-5 at 22; 121-2 at 1. Although Plaintiff removed the paper "[a]s soon as [he] was finished," correctional staff used that as a pretext to conduct a forced extraction just to "mess with [Plaintiff], which they often do." *See* ECF Doc. 121-2 at 1. Specifically, Defendant Nousiainen ordered Plaintiff "on audio" to remove the paper he had already removed and to submit to wrist restraints so officers could enter and confiscate all of Plaintiff's paper—which included a grievance Plaintiff was preparing to file—and his blanket. *Id.* Because Plaintiff did not want to relinquish his grievance and because officers refused to acknowledge he had already removed the paper from the window, Plaintiff resisted submitting to

---

[3] Plaintiff's evidence comes from his sworn complaint, ECF Doc. 1, his deposition testimony, ECF Doc. 96-5, and his sworn declaration in support of his opposition to Defendants' motion for summary judgment, ECF Doc. 121-2. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).

[4] While, at the time of the incident, Plaintiff was unable to use his legs to walk, he did not have a wheelchair in his cell and moved about by dragging himself on the floor. ECF Docs. 96-5 at 9, 22; 121-2 at 2.

Case No. 3:20cv5935-MCR-HTC

hand restraints. *See id.*; ECF Doc. 96-5 at 23. After briefly engaging a Crisis Intervention Technique ("CIT"), officers declared the CIT was "unsuccessful" and requested authorization for forced extraction. ECF Docs. 121-2 at 1–2; *see also* ECF Doc. 121-3 at 1–2. About thirty minutes later, Defendant Nousiainen arrived at Plaintiff's cell with an extraction team, which included the other named Defendants. *See* ECF Docs. 121-2 at 2; 96-5 at 23; *see also* 121-3 at 2.

Once the extraction team arrived at Plaintiff's call, Nousiainen asked Plaintiff if he was going to comply, to which Plaintiff responded, "Yes, Sir." ECF Docs. 121-2 at 2; 96-5 at 23. Nousiainen then ordered Plaintiff to submit to wrist restraints, by placing his hands "inside the box," but the "box" was closed. ECF Docs. 121-2 at 2; 96-5 at 23–24. After Plaintiff told Nousiainen the "box ain't open," Nousiainen rattled the metal flap of the box to make it sound like he was opening the box, but Nousiainen never opened it. ECF Docs. 1 at 7; 96-5 at 23–24; 121-2 at 2. Despite knowing Plaintiff could not place his hands inside the box, Nousiainen continued to demand that Plaintiff comply, threatening him with the use of force. ECF Doc. 121-2 at 2; *see also* ECF Doc. 121-3 at 3. After Plaintiff could not submit to restraints, Nousiainen declared "inmate Davis has refused to submit to handcuffs" and opened the door to Plaintiff's cell and allowed the other Defendants to rush into the cell. ECF Doc. 1 at 7.

Plaintiff attempted to pull himself up and out of the cell, so that the camera would "hopefully see [him] and see what the officers were doing to [him]," because "at that point [he] was in fear of [his] life," but Officer Vaughn and Officer Newcomb immediately started punching Plaintiff in the head and face, while Officer Vaughn dragged him to the back of the cell, also punching and hitting him in the face and the back of his head with "a clenched fist, and banging [Plaintiff's] bloody head and face on the concrete floor." ECF Docs. 1 at 7–8; 96-5 at 24–25. Nousiainen never told Vaughn to stop "even as he observed the blood running down [Plaintiff's] face and from the back of [his] head." ECF Docs. 1 at 8; 96-5 at 26.

Also, "Sergeant Daniels was assaulting [Plaintiff on his] legs and back with the handcuffs over his fist," and hit his body with leg shackles. ECF Doc. 1 at 8. Two additional officers, as well as the "camera man," were also present and "did absolutely nothing to prevent" these actions. *Id.* Throughout this interaction, officers repeatedly shouted for Plaintiff to "[s]top resisting," "[p]lace your hands behind your back," and "[d]rop your weapon," although he did not have a weapon, had his hands behind his back, and was not resisting. ECF Doc. 121-2 at 2; *see also* ECF Doc. 121-3 at 3. All this was done "because [Plaintiff is] a Black Man." ECF Doc. 1 at 8.

After subduing Plaintiff, Nousiainen ordered a spit shield[5] placed on Plaintiff's head even though Plaintiff "didn't spit on anyone and didn't try to spit on anyone." ECF Doc. 121-2 at 2.  This was done to conceal Plaintiff's injuries from the view of the cameras, other prisoners, and correctional staff as he was being taken to the medical triage room in a wheelchair.  *Id*.; ECF Doc. 96-5 at 26.  Plaintiff was "in a great deal of pain, in [his] head, face, and body," but he "recognized" that some of the nurses were trying to cover up the severity and nature of his injuries by using their bodies "to block out the camera from photographing [Plaintiff's] injuries." ECF Doc. 1 at 9.  Ever since the August 6, 2020, use-of-force incident, Plaintiff has suffered from persistent migraines (which he never experienced prior to the incident) and lower back pain.  ECF Doc. 96-5 at 32–34.

### B.     Defendants' Version of Events[6]

At approximately 3:02 a.m. on August 6, 2020, Nousiainen was working as the Quebec Dormitory Housing Supervisor to the Transitional Care Unit (TSU)/Crisis Stabilization Unit (CSU) at SRCI when he observed that Plaintiff's cell "window was covered up with some material, restricting all visibility into the cell." ECF Doc. 96-6 at 1.  Lack of visibility into Plaintiff's cell posed a "serious security risk as [Plaintiff] was being held in a Self-Harm Observation Status (SHOS) cell due

---

[5] A spit-shield is "a fabric hood used to prevent an inmate from spitting at staff." ECF Doc. 96-6 at 2 (Nousiainen's Declaration).
[6] Defendants' version of events is based on Defendants' sworn declarations, ECF Doc. 96-6.

to his continued self-injury of stabbing himself in his chest, and suicidal gestures/ideation." *Id.*[7] Nousiainen ordered Plaintiff to uncover his cell window, but Plaintiff refused. *Id.* Nousiainen ordered Plaintiff to submit to wrist restraints, so Nousiainen could enter Plaintiff's cell to remove the material blocking the cell window and to conduct a search, but Plaintiff again refused. *See id.* At approximately 3:10 a.m., Nousiainen notified the SRCI Warden that Plaintiff was "refusing all orders to submit to wrist restraints" and the Warden "authorized a use of force for a Forced Cell Extraction, and if necessary, to use appropriate physical force to overcome any physical resistance displayed by [Plaintiff]." *Id.* at 1–2.[8]

At approximately 3:15 a.m., Nousiainen assembled a team comprised of Defendants Daniels, Vaughn, and Newcomb (among others) and instructed them to prepare for a possible forced cell extraction. *See id.* at 2, 4, 7, 10. At approximately 3:40 a.m., video recording began, and Nousiainen introduced the members of the forced cell extraction team and provided instructions for the record. *Id.* at 2. Once at Plaintiff's cell door, Nousiainen, again, ordered Plaintiff to submit to wrist restraints, warning him that if he did not comply, the team would force entry into

---

[7] *See also* Plaintiff's Individualized Service Plan (dated June 30, 2020), ECF Doc. 96-3 at 1–3; Request for Transfer to Crisis Stabilization Unit ("CSU") (dated May 26, 2020), *id*. at 4; and Plaintiff's Mental Health Evaluation (dated Aug. 5, 2020), *id*. at 5–9.
[8] *See also* Warden's authorization of the use of force (dated Aug. 6, 2020), ECF Doc. 96-1 at 1.

Plaintiff's cell.  *Id.*  Plaintiff refused to submit to wrist restraints, so the team initiated a forced cell extraction.  *Id*.

At approximately 3:43 a.m., Defendants breached Plaintiff's cell door.  *Id.* Upon entry into Plaintiff's cell, Defendant Newcomb utilized a plexiglass shield to hold Plaintiff to the cell floor, so that the team could apply wrist and leg restraints. *Id*. at 4.  Once Newcomb had placed the shield on Plaintiff, Plaintiff "reached out and grabbed a hold of [Defendant Vaughn]'s right thigh and would not let go after multiple orders instructing him to do so." *Id.* at 4, 8.  At that point, Vaughn "utilized several distractionary [strikes on Plaintiff],[9] which consist[ed] of closed fist strikes to [Plaintiff]'s torso, with the intention of getting him to comply with releasing [Vaughn's] leg from his hold." *Id.* at 8.  These techniques worked and Plaintiff ultimately let go of Vaughn's thigh.  *Id.*  "Immediately afterwards," Defendant Daniels observed "what appeared to be a weapon in [Plaintiff's] hand.  *Id.* at 11. Defendants gave Plaintiff "several verbal orders to relinquish the weapon, to which he complied." *Id*.

Next, Defendants attempted to place wrist restraints on Plaintiff, but "he resisted by placing his hands underneath his body, and refused all orders to place his hands behind his back." *Id*.  Daniels and Vaughn then utilized "pain compliance

---

[9] Corrections officers use distractionary strikes, a form of diversion, to gain control over a subject. *See* ECF Doc. 96-8 at 1–2 (Declaration of John H. Debell, Bureau Chief for the Bureau of Professional Development and Training at FDOC).

Case No. 3:20cv5935-MCR-HTC

techniques,"[10] by applying minimal pressure to a pressure point behind Plaintiff's ear as they also pulled Plaintiff's arms from underneath his body to force Plaintiff to place his hands behind his back. *Id.* at 8, 11. This technique also worked, and Defendants successfully secured Plaintiff with wrist and leg restraints. *Id.* After Plaintiff was restrained, officers lifted Plaintiff from the cell floor and placed him into a wheelchair. *Id.* at 2. A spit-shield that "had been requested previously" was placed over Plaintiff's head before officers escorted Plaintiff to the medical triage room for a post use-of-force examination. *Id.* at 2–3. Medical staff conducted a post use-of-force examination of Plaintiff, noting and treating two "minor" abrasions on Plaintiff's head—one on the left side and one on the back. *Id.* at 3; *see also* ECF Doc. 96-1 at 13–14.

At approximately 4:00 a.m., Defendants returned Plaintiff to his cell in a wheelchair. *Id.* at 3. Plaintiff was placed on the cell floor so that his wrist and leg restraints could be removed. *Id.* Vaughn held Plaintiff down on the floor with a plexiglass shield to prevent him from moving while his restraints were being removed. *Id.* After the restraints were removed, Plaintiff was assisted to his bed

---

[10] Pain compliance is a technique used to cause minimal discomfort to a pressure point area until the inmate becomes compliant. ECF Doc. 96-6 at 2. The technique is applied "using a fingertip or thumb tip to target a nerve, joint or sensitive area causing pain and compliance to verbal direction." ECF Doc. 96-8 at 2.

and Defendants exited his cell, securing the door. *Id.* At approximately 4:03 a.m., Nousiainen gave a closing statement and ended the hand-held video recording. *Id.*

### C. The Video Evidence

The video evidence submitted by Defendants under seal includes both fixed-wing footage taken between the hours of 3:00 and 4:00 a.m. on August 6, 2020, as well as hand-held footage taken from just before the forced cell extraction up through Plaintiff's return to his cell after his post use-of-force examination. The fixed wing footage shows almost nothing, and what little audio is captured is garbled and difficult to understand.[11] What was recorded was shouting between what appears to be an officer ordering Plaintiff to submit to wrist restraints and another person (presumably, Plaintiff) shouting back that the "box is locked." A shouting match ensues in which officers yell "stop resisting" and "drop the weapon" while Plaintiff yells back "I'm not resisting" and "I got no weapon." Three minutes later, a spit shield is ordered and a glimpse of what appears to be Plaintiff being wheeled away from his cell is seen. Nothing else is captured by the fixed-wing cameras until 3:57 a.m., when Defendants appear to wheel Plaintiff back to his cell.

The hand-held camera footage is approximately nineteen-and-a-half (19.5) minutes long. Although the camera operator can be heard saying she will move

---

[11] Defendants also provided a transcript of the audio from the cameras. ECF Doc. 96-2, Exhibit B to Defendants' motion.

around as necessary to get a good view of the incident, the only view provided is that of the backs of the officers as they enter Plaintiff's cell with a few glimpses of Plaintiff lying prone on the floor. Significantly, from the moment Defendants enter Plaintiff's cell until Plaintiff is placed in a wheelchair and wheeled out of the cell with the spit-shield on, the video captures almost none of Defendants' use of force, which occurs entirely inside the cell. Also, while the footage shows blood on the spit-shield covering Plaintiff's head and on his clothing, the extent of Plaintiff's injuries cannot be seen on the video.

The hand-held video footage follows Plaintiff to the medical area and shows Plaintiff was treated by prison medical personnel for approximately twelve (12) minutes. It appears the treatment is for Plaintiff's head injuries, but as a nurse approaches Plaintiff to seemingly lift the spit shield and apply treatment, two officers walk to the side of the Plaintiff, completely obstructing the camera's view. Thus, there is no video footage of Plaintiff's head or face without the spit shield covering.

## III. DISCUSSION

In their amended motion, Defendants argue they are entitled to judgment as a matter of law on four (4) grounds. First, Plaintiff failed to prove an Eighth Amendment violation. ECF Doc. 96 at 15–28. Second, Defendants are entitled to qualified immunity. *Id.* at 28–32. Third, Defendants are immune under the Eleventh Amendment for any official-capacity claims seeking monetary damages. *Id.* at 32–

33. And fourth, Plaintiff is not entitled to compensatory or punitive damages as he suffered only *de minimis* injuries and Defendants did not act willfully or maliciously. *Id*. at 33–36.

As discussed in detail below, the undersigned finds that, based on the competing affidavits and the lack of video evidence which is "blatantly contradictory" to Plaintiff's version of the events, there is a question of fact as to whether excessive force was used by Defendants. *See Jones v. City of Cincinnati*, 736 F.3d 688, 692 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 380–82 (2007)). Thus, Defendants are not entitled to summary judgment on Plaintiff's excessive force claim. The undersigned also finds a question of fact exists as to whether Plaintiff is entitled to compensatory and punitive damages. The undersigned agrees, however, Plaintiff cannot recover monetary damages against Defendants in their official capacity. Thus, the motion for summary judgment should be granted *only* as to that limited claim.

A.  **Section 1983 Eighth Amendment Claims**.

"The Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs." *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (citation omitted). In Eighth Amendment excessive force claims, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained,

but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

In determining whether force was applied maliciously and sadistically to cause harm, a court considers: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Additionally, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301–02 (11th Cir. 2002) (citations and internal quotation marks omitted); *see also Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (rejecting view that arrestee must specify the actions of each alleged participant in a collective beating).

Applying those factors here, the Court cannot say that no excessive force was used. While Defendants assert they used the "minimum amount of force necessary" to get Plaintiff to comply with lawful orders, Plaintiff has presented evidence to the contrary and the video footage does not conclusively establish what happened either

before or after Defendants entered Plaintiff's cell.  Thus, at summary judgment the Court must accept Plaintiff's version of events as true.  *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment.") (citations omitted); *Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012) ("[F]or purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,' and it may not be disregarded by the district court in determining whether there is a genuine dispute of fact on a material issue in the case.").

Plaintiff's evidence, if believed, suggests the forced cell extraction was not necessary[12] because he had removed the paper obstructing his window, as ordered, and had agreed to submit to wrist restraints, so that officers could enter his cell without force.  Plaintiff's evidence thus indicates that Defendants had no safety reason to force him out of his cell—rather, Defendants "just wanted to mess with [him]."  ECF Doc. 121-2 at 1–2.  Plaintiff's evidence further suggests that, once inside the cell, Defendants repeatedly pounded his head into the concrete floor after he had been restrained, causing "severe impact injuries to [his] head."  *Id.*  Plaintiff

---

[12] Plaintiff also argues the use-of-force authorization form was not signed by the Warden.  *See* ECF Doc. 127 at 4.

disputes he grabbed Vaughn's leg or that he had a weapon inside the cell and, thus, disputes any use of force was necessary.

Without video evidence to the contrary, the Court cannot ignore Plaintiff's sworn allegations that Defendants intentionally created a false narrative about his non-compliance to justify their use of force, including by repeating orders with which he had complied, yelling at him to stop resisting when he was not, and placing a spit-shield on him for no other reason than covering the extent of his injuries.[13] *See id.*; *see also* ECF Doc. 118-4 (FDOC email acknowledging lack of records showing any weapon was located). Moreover, given Plaintiff's allegations regarding his disability, even if some force was needed to restrain Plaintiff, it is unclear whether the amount of force used was excessive. Thus, while Plaintiff may ultimately be unsuccessful at trial, the countervailing affidavits create genuine issues of material fact that this Court is not at liberty to resolve.

Plaintiff also alleges that Nousiainen violated Plaintiff's Eighth Amendment rights when he failed to prevent Daniels, Vaughn, and Newcomb from using excessive force against him. "[A]n officer can be liable for failing to intervene when another officer uses excessive force." *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000); *see Dukes v. Miami–Dade Cnty.*, 232 F. App'x. 907, 913

---

[13] Plaintiff also claims the spit shield was not necessary because he had no "history" of spitting as Defendants allege. ECF Doc. 127 at 10.

Case No. 3:20cv5935-MCR-HTC

(11th Cir. 2007) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.") (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).  Because there is a question of fact as to whether Defendants used excessive force against Plaintiff, necessarily, there is also a question of fact as to whether Nousiainen had an obligation to intervene.  *Donald R. Jones, Jr., v. Cash,* No. 3:21cv487-MCR-HTC, 2022 WL 2820752, at *2 (N.D. Fla. June 13, 2022), *report and recommendation adopted sub nom. Jones v. Cash,* No. 3:21cv487-MCR-HTC, 2022 WL 2818261 (N.D. Fla. July 19, 2022) (denying motion for summary judgment on failure to intervene claim because there is a material question of fact as to whether excessive force was used).

Accordingly, Defendants are not entitled to summary judgment on the basis that Plaintiff failed to prove they used excessive force.[14]

### B.   Qualified Immunity

Defendants also argue they are entitled to qualified immunity.  However, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and

---

[14] Defendants also argue that Plaintiff has failed to raise a claim for supervisory liability against Nousiainen; however, Plaintiff has not asserted such a claim.  Instead, Nousiainen is sued for his direct involvement in the use of force against Plaintiff, including specifically for his failure to intervene.  *See* ECF Doc. 1.

sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich*, 280 F.3d at 1301. A reasonable prison official would understand that repeatedly hitting a restrained prisoner without justification or allowing a coworker to do so without intervening would violate the Constitution. Defendants, therefore, are not entitled to qualified immunity on Plaintiff's Eighth Amendment excessive force claim and their motion for summary judgment should be denied.

### C.  Eleventh Amendment Bar

Defendants argue Plaintiff is not entitled to recover monetary damages from Defendants in their official capacities. The undersigned agrees. A suit against a state employee in his or her official capacity is a suit against the State for Eleventh Amendment purposes. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In the absence of any waiver or express congressional authorization, the Eleventh Amendment prohibits a suit against a State in federal court. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Congress did not intend to abrogate the States' Eleventh Amendment immunity in damage suits brought under 42 U.S.C. § 1983. *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995) (citation omitted). Florida, too, has neither waived its sovereign immunity nor consented to a suit for damages under § 1983. *See Gamble v. Fla. Dep't of Health and Rehab. Servs.*, 779 F.2d 1509, 1520 (11th Cir. 1986); *see*

Fla. Stat. § 768.28(18) (2022) (explicitly not waiving Florida's immunity from suit in federal court). Thus, all official capacity claims asserted against Defendants for monetary relief should be dismissed.

### D. Compensatory and Punitive Damages

Defendants argue Plaintiff is not entitled to compensatory damages because Plaintiff did not suffer a more than *de minimis* physical injury. ECF Doc. 96 at 33–34. As stated above, the video shows Plaintiff's head was bleeding, but does not show the extent of those injuries because of the spit shield and the position of the Defendants and the camera. The medical records confirm Plaintiff had a 3/4" abrasion to the left side of his head and the center of the occipital area (back of his head), which was "oozing blood." ECF Doc. 96-1, Exhibit A. Also, while Defendants characterize the injuries as "two minor abrasions," *id.* at 12, Plaintiff says he "suffered severe impact injuries to [his] head" and now suffers from frequent migraines and lower back pain as a result. ECF Docs. 96-5 at 33–34; 121-2 at 1.

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds a question of fact exists as to whether Plaintiff's injuries are more than *de minimis*. *See, e.g.*, *Jenkins v. Hutcheson*, 2016 WL 4496561, at *13 (S.D. Ga. June 22, 2016), *report and recommendation adopted*, 2016 WL 4491850, at *1–2 (S.D. Ga. Aug. 25, 2016) (denying summary judgment on plaintiff's excessive force claim where plaintiff said he suffered lacerations, bruising, swelling, migraines, and

numbness in his hands because a reasonable jury could find the injuries to be more than *de minimis*).

Defendants further argue Plaintiff is not entitled to punitive damages because Plaintiff has put forward no evidence that Defendants' use of force was either racially motivated or motivated by an evil intent to do harm. ECF Doc. 96 at 34–36. The purpose of punitive damages is "to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Hoever v. Marks*, 993 F.3d 1353, 1358–60 (11th Cir. 2021) (finding punitive damages recoverable even in the absence of a physical injury). "An award of punitive damages is authorized in a civil rights case if 'the defendant was motivated by an evil motive or intent, or there must be reckless or callous indifference to federally protected rights.'" *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991).

As set forth above, viewed in the light most favorable to Plaintiff, the evidence put forth by Plaintiff suggests the Defendants made up a reason to harass Plaintiff and enter his cell. Plaintiff's complaint suggests he would argue at trial that Defendants' actions were racially motivated. If the jury believes Plaintiff's version and believes the Defendants unnecessarily and without provocation slammed Plaintiff's head into the concreate and then attempted to cover his injuries with a spit shield, then the jury may also conclude punitive damages are recoverable.

Accordingly, it is respectfully RECOMMENDED that:

1. Defendants' motion for summary judgment, ECF Doc. 96, be DENIED IN PART and GRANTED IN PART as follows:

   a. Judgment be GRANTED with regard to any claim against Defendants in their official capacity.

   b. Judgment be DENIED as to the Eighth Amendment claims and claims for damages.

2. This matter be referred to the undersigned for further pretrial proceedings.

At Pensacola, Florida, this 27th day of December, 2022.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1.